UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NANCY CORSON,            )
                         )
    *Plaintiff*   )
                         )
v.                       )    *No. 1:11-cv-251-GZS*
                         )
MICHAEL J. ASTRUE,       )
**Commissioner of Social Security,**  )
                         )
    *Defendant*   )

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff had failed to meet the non-disability requirements of the Social Security Act. I recommend that the decision of the commissioner be affirmed.

The administrative law judge found, based on the May 29, 2008, hearing decision of a different administrative law judge, Thomas H. Fallon, that the plaintiff was under a disability as of the date of her application filed on August 23, 2004, Finding 1, Record at 18; that she had failed to provide evidence and otherwise failed to cooperate with the commissioner's prescribed processes for determining whether she met the non-disability income and resources requirements to be eligible for SSI, Finding 2, *id.*; and that, accordingly, she did not meet the non-disability requirements of the Act, Finding 3, *id.* The Appeals Council found no reason to disturb the

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 16, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

decision, *id*. at 6-9, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

## I. Discussion

The plaintiff seeks reversal and remand on the basis that the administrative law judge wrongly predicated his conclusion that she did not meet SSI financial eligibility requirements on a negative credibility assessment rather than on the underlying evidence, which she contends supports her financial eligibility for SSI. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 13) at 4.

As a threshold matter, the plaintiff contends that, because she provided sufficient evidence to address the administrative law judge's concerns and meet her burden of proving her financial eligibility for SSI, his credibility determination was irrelevant. *See id*. at 4-5. Specifically, she asserts, she provided objective evidence that:

1. She earned a total of only $40 for light housekeeping work performed for her neighbor, Sandie Allen, in 2006, 2007, and/or 2008. *See id*. at 7. The commissioner's own earnings report shows that she received no earned income for those years. *See id*. at 7-8. In any event, even if she earned $40 in each of those years, that would not disqualify her for SSI benefits. *See id*. at 7.

2. She was divorced from her ex-husband, Brian Folsom, Sr., on March 2, 2006, the divorce decree provided that she was to receive monthly spousal support of $550 monthly, the amount of her rent, for the period from March 7, 2006, through February 7, 2008, and she turned those funds over to her landlord each month to pay her rent. *See id*. at 8.

3. She never lived with Allen following her divorce. *See id*.

4. She lost her automobile in 2006 after it was impounded. *See id*. at 8-9.

She adds that the fact that she testified, at her hearing, that she was now living with a boyfriend did not provide a basis for denying her claim for SSI benefits, particularly when the administrative law judge did not even question her about her living arrangements. *See id*. at 9.

She argues that, to the extent that credibility is relevant, the administrative law judge erred in (i) perceiving "a willful failure to present evidence within [the plaintiff's] control needed to determine eligibility" and (ii) concluding that "[t]he types of misstatements and omissions made in this case are not those of cognitive misunderstanding." *Id*. at 3 (quoting Record at 17-18).

She notes that, in the decision at issue, the administrative law judge accepted the finding of Administrative Law Judge Fallon that she met the requirements of Listing 12.05(C), pertaining to mental retardation, and was markedly limited in, or precluded from, performing such functions as (i) understanding, remembering, and carrying out even very short and simple instructions, (ii) asking simple questions, (iii) maintaining socially appropriate behavior, and (iv) making simple work-related decisions. *See id*. at 6. She contends that the administrative law judge, as a layperson, was not qualified to determine without expert medical assistance that her issues regarding communication concerning her claim were unrelated to her Listing-level mental retardation. *See id*. at 6-7.

3

Nonetheless, on the totality of the evidence, the plaintiff fails to make a persuasive case for reversal and remand.

### A. Objective Evidence of Income, Resources

The plaintiff bore the burden of proving her financial eligibility for SSI benefits. *See, e.g.*, 20 C.F.R. §§ 416.200, 416.202(c)-(d) (claimant must provide the commissioner with "any information [he] request[s] and show [him] necessary documents or other evidence to prove" that claimant meets the basic SSI eligibility requirements, which include those pertaining to income and resources), *id*. § 416.203(a) (commissioner will ask claimant "for information about [the claimant's] income and resources and about other eligibility requirements and [the claimant] must answer completely").

The commissioner "does not determine SSI eligibility solely on the basis of statements concerning eligibility factors by applicants and recipients." Social Security Administration Program Operation Manual System ("POMS") § SI 00810.500(1) (Income Verification). The commissioner "verif[ies] relevant information from independent or collateral sources, and obtain[s] additional information as necessary to be sure that only eligible individuals are paid and that payment amounts are correct." *Id*. A claimant's living arrangements are important. For example, for purposes of determining SSI financial eligibility, the commissioner places a value on in-kind support and maintenance, which "means any food or shelter that is given to [a claimant] or that [a claimant] receive[s] because someone else pays for it." 20 C.F.R. § 416.1130(b).

The plaintiff is correct that the record contains objective evidence that:

1. She was divorced from her ex-husband, Brian Folsom, on March 2, 2006, *see id*. at 56;

2. The divorce decree required that Folsom pay her $550 in monthly spousal support through February 2008, after which she was entitled to nominal spousal support of only $1 annually, *see id*. Until February 2008, she received and endorsed over to her landlords, in payment of her $550 monthly rent, her monthly spousal support checks of $550, *see id*. at 157-59; and

3. Although she and Allen lived for a time in the same apartment building in Dexter, Maine, they lived in different apartments, *see id*. at 138-48.

Nonetheless, the administrative law judge supportably concluded that the plaintiff failed to provide credible proof of the amount of unreported income that she received from Allen or that she lived alone at all relevant times.

The plaintiff made a number of conflicting statements concerning her unreported income, some of which were made under penalty of perjury or under oath, including:

1. A statement in her May 17, 2006, SSI application, made under penalty of perjury, that she performed "housekeeping for Sandy" at her "home address," which was not provided; that she expected to receive, from January 2006 and continuing, gross earnings and a net profit of $240; that she did not file tax returns; and that she understood that she needed to keep track of what she made so that she would know the total at the end of the year. *See id*. at 53-54;

2. Sworn testimony during a July 2, 2008, "pre-effectuation review contact," in the wake of Administrative Law Judge Fallon's decision finding her medically disabled, that (i) she had not been paid for any self-employment or housekeeping work in 2006 or thereafter, (ii) upon reviewing the statements made in her 2006 application, that she did receive payment for housekeeping work for Sandie Allen, but only a one-time payment in 2006 for $10, (iii) after being reminded that her application suggested that she thought she would earn more than that,

5

that she did earn $240 through self-employment in 2006, that she had not kept any records as she had indicated that she would, and that she had received absolutely no payment for housekeeping services or other self-employment in 2007 or later, and (iv), upon being asked when she last did housework for Allen for which she was paid, that she was paid "last month." *See id*. at 175;

3. A signed, witnessed statement dated July 17, 2008, that she was paid $20 by Allen in each of the months of May and June 2008 for housework and did not plan to work for Allen or anyone else again. *See id*. at 94;

4. A sworn statement dated October 10, 2008, that she had done some housecleaning for Allen in May 2007 and June 2007, for which Allen paid her $20 in each of those months, and that she had stopped in June 2007 due to her physical problems. *See id*. at 136; and

5. A sworn statement dated October 27, 2008, that she had done light housekeeping for Allen in May 2006 and June 2006 and was paid $20 in each of those months, that she had never done any other work for Allen in 2007 or 2008, and that she was mistaken when she said that she had worked for Allen in 2007 and 2008. *See id*. at 155.

As summarized by Claims Representative Shawn Roberts in a December 29, 2008, decision denying the plaintiff's request for reconsideration of the denial of her SSI application for failure to provide credible evidence of her financial eligibility, there are numerous inconsistencies among these statements. *See id*. at 177-78.

While the plaintiff submitted statements of Sandie Allen, they, too, were contradictory. *Compare id*. at 95 (signed, witnessed statement of Allen dated July 17, 2008, that she paid the plaintiff $20 in each of the months of May and June 2008 for housework) *with id*. at 137 (sworn statement of Allen dated October 10, 2008, that the plaintiff had done housecleaning for her in May 2007 and June 2007, for which Allen paid her $20 in each of those months, and the plaintiff

6

stopped in June 2007 because of physical problems), 156 (sworn statement of Allen dated October 27, 2008, that the plaintiff had done light housekeeping for Allen in May 2006 and June 2006, was paid $20 in each of those months, had done no work for Allen in 2007 or 2008, and that Allen was mistaken in having previously stated otherwise). The plaintiff submitted no documentation, such as canceled checks or bank statements, to verify her levels of unreported income.

The plaintiff argues that, regardless of the inconsistencies, there is no evidence to suggest that her earnings exceeded allowable amounts in 2006, 2007, or 2008 because, even if she earned the disputed $40 in *each* of those years, that would not disqualify her from SSI eligibility. *See* Statement of Errors at 7. At oral argument, her counsel further contended that, even if she earned $240 in any given year, the maximum that she either projected she would earn or claimed to have earned, *see* Record at 53-54, 175, that would not have sufficed to disqualify her. This begs the point that the lack of any credible evidence is tantamount to the production of no evidence. The commissioner was not required to conclude, in accordance with the plaintiff's contradictory sworn statements, that she had earned at most $240 in any of those years.

In the circumstances, the administrative law judge supportably found that the plaintiff supplied no credible evidence of the level of her unreported income and otherwise failed to cooperate with the commissioner's process of verifying SSI income/resource eligibility.

With respect to the plaintiff's living arrangements, as the administrative law judge observed, *see id*. at 16, the plaintiff had a history of filing SSI applications in which she claimed that she was living apart from her husband during time periods for which the commissioner was able to determine that they were living together, *see id*. at 20, 36, 39, 101-02. Against this

7

backdrop, she failed to report until the time of her hearing that she had begun living with a boyfriend. *See id*. at 18, 263.

The plaintiff argues that nothing in her testimony regarding her new living arrangement provides a basis for denying her claim for SSI benefits, pointing out that the administrative law judge did not even question her about the details of that arrangement. *See* Statement of Errors at 9; Record at 263-65. Nonetheless, the plaintiff had an affirmative duty to report the change in her living circumstances, as well as any support that she might have received from her boyfriend. *See, e.g.*, 20 C.F.R. §§ 416.704(4), 416.708(b)-(c), 416.714(a), 416.1130(a) (applicants for SSI benefits must immediately report any change in the make-up of their households and in their "income," defined to include in-kind support and maintenance). Thus, this default, as well, constituted substantial evidence of a failure to cooperate with the commissioner's process for determining SSI financial eligibility.

### B. Cognitive Impairment *Versus* Willful Noncooperation

The plaintiff next contends that, to the extent that the administrative law judge properly considered her credibility, he improperly attributed inconsistencies to willful noncooperation rather than to disability-related cognitive limitations. *See* Statement of Errors at 5-7. I am unpersuaded.

The plaintiff, who bore the burden of proving her financial eligibility for SSI benefits, *see, e.g.*, 20 C.F.R. §§ 416.200, 416.202, submitted no expert evidence that her contradictory statements were caused by her disability. That she was found, as a general matter, to be markedly limited or precluded in certain work-related mental functions is not necessarily inconsistent with a finding that she made deliberate misstatements and/or omissions in an effort to obtain SSI benefits.

8

At oral argument, the plaintiff's counsel contended that the administrative law judge had at least some duty to develop the record concerning the degree to which his client's inconsistencies and omissions emanated from her cognitive limitations, a proposition for which he cited *Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010), and *Higbee v. Sullivan*, 975 F.2d 558 (9th Cir. 1992), as well as 20 C.F.R. §§ 416.1322(b) and 416.1340(e). However, in both *Spiva* and *Higbee*, the mentally ill claimant was unrepresented by counsel in circumstances in which there was a serious question as to whether the claimant's mental illness had caused what the commissioner viewed, in *Spiva*, as credibility problems indicative of non-disability, and in *Higbee*, as a failure to provide proof of eligibility for continuing SSI benefits, specifically that the claimant was a U.S. resident and had resources below the allowable limit. *See Spiva*, 628 F.3d at 351-53; *Higbee*, 975 F.2d at 561-63. Here, the plaintiff was at all relevant times represented by counsel and, as discussed below, the record in this case lent itself to a common-sense judgment that her misstatements and omissions were not the product of her mental impairments.

Nor do the cited regulations help the plaintiff. They are inapposite in that they concern continuing eligibility for benefits, including the temporary suspension of benefits as a "penalty" for the making of knowingly false statements or omissions in connection with continuing eligibility reviews. *See* 20 C.F.R. §§ 416.1322(b), 416.1340(e). In any event, even were those regulations applicable, I would not find any substantive deviation from the requirements of section 416.1340(e): the administrative law judge based his decision on the evidence and reasonable inferences drawn therefrom, documented the basis and rationale for his finding, and considered the plaintiff's mental limitations. *See id.* § 416.1340(e).

9

On this record, the administrative law judge did not require expert assistance to reach the conclusion that the plaintiff's evidentiary problem was not one of cognition but, rather, willful failure to present evidence within her control needed to determine eligibility. *See* Record at 17-18; *see also, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record.").

As the administrative law judge noted, *see* Record at 16, the plaintiff had a history of misstating or claiming ignorance of fundamental facts in seeking SSI benefits, including:

1. Her claim in a 2002 application for SSI benefits that she was separated from her husband, which the commissioner determined to be false. *See id*. at 16, 20, 101;

2. Her claim in an August 2004 application for SSI benefits that she was living alone, that her husband was paying $1,048 in rent and $100 of her electricity bill, that she did not know his whereabouts, that he paid the rent directly to the landlord, and that she gave her electricity bills to her sister-in-law, who forwarded them to her husband. *See id*. at 16, 27. Per Claims Representative Roberts, the plaintiff's "allegation that her husband was voluntarily paying over $1100.00 per month for her household expenses while he maintained a separate residence seemed suspicious." *Id*. at 101. When asked to contact her sister-in-law to obtain Folsom's whereabouts, the plaintiff refused. *See id*. Roberts noted that, after the 2004 application was denied for failure to cooperate, "sworn statements made as part of another family member's July 2005 redetermination of SSI benefits suggested that [the plaintiff] and Mr. Folsom lived together from at least 1996 through August 2005[.]" *Id*. at 101-02; and

3. Her claim in a December 12, 2005, application for SSI benefits that she was living alone when, as it turned out, she was still living with Folsom. *See id*. at 36, 39, 102.

In addition, Roberts observed that one medical report in the file suggested that the plaintiff "was able to walk without impediment when she thought she was not being observed but was noted to embellish her actions when the doctor was explicitly observing her[,]" *id*. at 99, 180, and a second medical report contained an after-the-fact handwritten statement in handwriting remarkably similar to that of the plaintiff, containing grammatical errors unlikely to have been made by the physician completing the form, stating, "Nancyes Knees are Really Bad. They give her alot of pain. It never goes away[,]" *id*. at 180.

Beyond this, as the administrative law judge noted, *see id*. at 18, the plaintiff testified at her hearing that (i) she reported a pedestrian/car accident in which she was involved to the police, *see id*. at 266, although the underlying police records submitted by her attorney's office indicate that she left the scene of the accident, *see id*. at 165-66, and (ii) she was now living with a boyfriend, *see id*. at 263, adding a new element to the income/resources issue that had not been reported prior to the hearing.

The administrative law judge supportably determined that, despite the plaintiff's acknowledged cognitive impairments, it defied logic that she could be capable of living without a guardian, driving, and shopping independently for groceries, *see id*. at 266, but could forget whether she had last worked one month ago or two years ago or, even more fundamentally, whether or not she still lived with her spouse, *see id*. at 18. The finding of willful noncooperation is supported by substantial evidence.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of March, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge